## UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| **ALDON BARKER,** | : | **Civil No. 1:15-CV-574** |
| | : | |
| **Plaintiff,** | : | |
| | : | **(Chief Judge Conner)** |
| **v.** | : | |
| | : | **(Magistrate Judge Carlson)** |
| **CAROLYN W. COLVIN** | : | |
| **Commissioner of the** | : | |
| **Social Security Administration** | : | |
| | : | |
| **Defendant.** | : | |

## REPORT AND RECOMMENDATION

### I.    Introduction

The plaintiff, Aldon Barker ("Mr. Barker"), an adult individual who resides within the Middle District of Pennsylvania, seeks judicial review of the final decision of the Commissioner of Social Security ("Commissioner") denying his claims for Disability Insurance Benefits and Supplemental Security Income under Titles II and XVI of the Social Security Act.  Jurisdiction is conferred on this Court pursuant to 42 U.S.C. §405(g) and 42 U.S.C. §1383(c)(3).

This matter has been referred to the undersigned to prepare a report and recommended disposition pursuant to the provisions of 28 U.S.C. §636(b) and Rule 72(b) of the Federal Rules of Civil Procedure.  For the reasons set forth below, we find that the final decision of the Commissioner of Social Security is supported by substantial evidence.  Accordingly, it is recommended that the final

decision of the Commissioner denying Mr. Barker's claims be **AFFIRMED**, and Mr. Barker's request for relief be **DENIED**.

## II.  <u>Statement of Facts and of the Case</u>

Mr. Barker previously worked as a cart pusher/store laborer, and as a machine operator.  He has a limited education.[1] Mr. Barker reported that he stopped working on October 20, 2011, when he was 39 years old, because of his various medical conditions.  (Admin. Tr. 149).  On February 14, 2012, Mr. Barker applied for disability benefits under Titles II and XVI of the Social Security Act. In both applications, Mr. Barker alleged that he became unable to work beginning October 20, 2011, as a result of the following conditions:  neck and back pain and numbness of arms, and rheumatoid arthritis.  <u>Id.</u>  In addition, Mr. Barker reported that he fell and cracked his skull in five places in June 2012.  He alleges that these additional injuries exacerbate his neck pain, and cause the additional symptoms of head pain and loss of memory.  (Admin. Tr. 185); (Admin. Tr. 30).

Mr. Barker alleges that his conditions affect his ability to lift, squat, bend, stand, reach, walk, sit kneel, climb stairs, remember, complete tasks, concentrate,

---

[1] "Limited education means ability in reasoning, arithmetic, and language skills, but not enough to allow a person with these educational qualifications to do most of the more complex job duties needed in semi-skilled or skilled jobs. We generally consider that a 7th grade through the 11th grade level of formal education is a limited education."   20 C.F.R.  §  404.1564(b)(3); 20 C.F.R.  § 416.964(b)(3).

follow instructions, and use his hands.  (Admin. Tr. 172).  Mr. Barker reported that his pain is so severe that it impacts his ability to sleep, walk, concentrate, and maintain attention.  (Admin. Tr. 167).  Mr. Barker alleges that he has difficulty performing personal care tasks that require him to bend at the waist, lift his legs, lift up his head, or sit for more than five minutes.  (Admin. Tr. 168).  He reported in March 2012, that he could walk approximately forty-five minutes or eight blocks at one time.  During his October 2013 hearing, Mr. Barker testified that he could not sit down for more than ten minutes at one time, could walk no more than one block at a time, and frequently stumbles over curbs because he cannot lift his foot up high enough.  (Admin. Tr. 35-36).

Despite these claimed limitations, Mr. Barker has stated that he rents a room on the third floor of a house owned by a friend.  Mr. Barker reported in March 2012 that he often babysat his housemate's ten-year-old child.  (Admin. Tr. 167-74).  He also reported that he was able to cook, clean, do laundry, mow the lawn, and make basic household repairs.  Id.  In March 2012 his hobbies included watching television, playing cards, doing puzzles, and fixing things.  Id.  Mr. Barker also reported that he visited his sister one to two times per week, went to the store one or two times per week, and went to medical appointments once per month.  Id.  In October 2013 he testified that, since his head injury it is difficult

for him to concentrate due to pain, his neck continues to cause incredible pain but his physician will not recommend further surgical intervention because it is against the law to immobilize Mr. Barker's entire neck.  (Admin. Tr. 31).  Mr. Barker's assertion that further medical care for his conditions is forbidden and illegal is unsupported by any other evidence in the record of this case.  Mr. Barker reported that he no longer goes shopping, does not do any household chores, and has no hobbies.  (Admin. Tr. 33-34).

During the year before his alleged onset date, Mr. Barker presented to the emergency room multiple times with complaints of neck and back pain.  On his fifth visit to the emergency department a physician noted that Mr. Barker came in requesting prescription refills because he could not be seen by the Memorial Hospital Clinic.  The doctor explained that he would not be accepted at the clinic because he is insured and the clinic serves "self-pay" or "medical assistance" patients only.  Mr. Barker was encouraged to establish care with a primary care physician who accepts his insurance.  (Admin. Tr. 198).

On August 17, 2010, Mr. Barker underwent an anterior cervical fusion surgery at C6-C7 to relieve some of his neck pain.  (Admin. Tr. 243).  He tolerated the procedure well and there were no complications.  (Id.)  During follow-up examinations it was noted that Mr. Barker was doing well and making slow

4

progress.  In October 2010, it was noted that Mr. Barker was doing "delightfully well" and was planning to return to work in a few days.  (Admin. Tr. 240).  Mr. Barker's orthopedist noted on October 14, 2010, that Mr. Barker could return to full duty work on October 25, 2010.  (Admin. Tr. 256).

In January 2012, Mr. Barker was examined in the emergency department with neck pain.  Mr. Barker reported that he was one-year post cervical fusion surgery and that he has had chronic neck pain since the surgery.  (Admin. Tr. 259-61).  The emergency room physician noted that Mr. Barker had not appropriately followed-up with his surgeon, and assessed that Mr. Barker's pain was likely consistent with chronic degenerative disc disease in his neck as well as musculoskeletal sprain/strain. (Id.)  Mr. Barker was advised to follow-up with his orthopedist.

On May 16, 2012, Mr. Barker was examined by consultative medical examiner Dr. Shruti P. Dhorajia ("Dr. Dhorajia").  Mr. Barker complained of constant severe neck pain that radiates down his leg, is aggravated by activity, and is partially relieved by morphine and oxycodone.[2]  (Admin. Tr. 277).  Dr. Dhorajia noted that Mr. Barker could lift up to three pounds, stand fifteen minutes, sit for

_____

[2] Mr. Barker reported that he only takes prescription medications occasionally when they are prescribed at a hospital.  He reported that he has no medical insurance and cannot afford prescription medication, so he typically uses ibuprofen for his pain.  (Admin. Tr. 277).

fifteen minutes, and was limited in his ability to push or pull with his upper and lower extremities secondary to his symptoms of finger and arm numbness, and back pain.  In her report, Dr. Dhorajia reported that this characterization of Mr. Barker's symptoms and limitations was "per the patient."  (Admin. Tr. 278).  Dr. Dhorajia also noted that Mr. Barker could bend, kneel, stoop, crouch, balance and climb occasionally secondary to back pain.  He also noted that Mr. Barker's pain is increased by wetness.  On range of motion testing, Mr. Barker exhibited a normal range of motion in all joints, but did demonstrate increased pain in his neck during testing.  Dr. Dhorajia observed that Mr. Barker walks very slowly, has a bilateral limp, cannot walk on his heels, has a positive straight leg raise on both sides in the sitting and supine position, and has 10% atrophy above and below his knees, elbows, shoulders, and hips.

In an accompanying medical source statement, Dr. Dhorajia assessed that Mr. Barker could:  occasionally lift or carry up to three pounds; stand and walk no more than fifteen minutes per eight-hour day; sit for fifteen minutes; and occasionally bend, kneel, stoop, crouch, balance, and climb.  Dr. Dhorajia also assessed that Mr. Barker is limited in his ability to push and pull with his upper extremities due to numbness in his fingers, is limited in his ability to push or pull with his lower extremities due to back pain, and that wetness increases his pain.

During the initial administrative review of Mr. Barker's claims, the medical and other evidence that was available on or before May 25, 2012, including the examination report and medical source statement of Dr. Dhorajia, was evaluated by State agency medical reviewer Bruno Petruccelli ("Dr. Petruccelli"). Dr. Petruccelli opined that Mr. Barker could: occasionally lift and/or carry (including upward pulling) twenty pounds; frequently lift and/or carry (including upward pulling) ten pounds; stand and/or walk (with normal breaks) a total of six hours per eight-hour workday; sit (with normal breaks) for a total of six hours in an eight-hour workday; frequently climb ramps and stairs, balance, and kneel; occasionally stoop crouch, and crawl; and never climb ladders, ropes, or scaffolds. (Admin. Tr. 48-50, 57-58).

Mr. Barker's claims were denied at the initial level of administrative review on June 4, 2012.

On June 8, 2012, Mr. Barker lost consciousness after he was struck in the head by an unknown assailant. (Admin. Tr. 283, 307). Mr. Barker experienced some short term memory loss a result of his injury. After he was transferred from Memorial Hospital to York Hospital for treatment he reported that he was also struck by a small vehicle or truck. (Admin. Tr. 307). X-rays of Mr. Barker's left hip, chest, and pelvis were normal. (Admin. Tr. 315-16). A CT scan of Mr.

Barker's cervical spine revealed an apparent fracture of the right suboccipital calvarium. It was also noted that Mr. Barker had disc protrusions that indented the thecal sac at C2-C3, C3-C4, C4-C5, and C5-C6, with likely mild cord compression at C4-C5. (Admin. Tr. 314). A CT scan of Mr. Barker's brain revealed the impression of a combination of subarachnoid and subdural hemorrhage, areas of hemorrhagic contusion in the mid frontal region, and a small subdural hematoma extending along the anterior aspect of the interhemispheric region. (Admin. Tr. 312). Mr. Barker was admitted to the intensive care unit, where he remained for two days. On discharge Mr. Barker was instructed to resume activities as tolerated, but to avoid heavy lifting/strenuous exercise. (Admin. Tr. 301).

On July 26, 2012, Mr. Barker appeared and testified with the assistance of counsel during a hearing before Administrative Law Judge Patrick S. Cutter ("ALJ"). Impartial vocational expert Andrew Caporale ("VE Caporale") also appeared and testified during the hearing.

On October 23, 2013, the ALJ denied Mr. Barker's applications for benefits in a written decision after concluding that Mr. Barker did not qualify for disability benefits under Title II or Title XVI of the Social Security Act between October 20, 2011, and October 23, 2013, because he could engage in other work that exists in the national economy during the relevant period. Mr. Barker requested review of

the ALJ's October 2013 decision by the Appeals Council of the Office of Disability Adjudication and Review. The Appeals Council denied Mr. Barker's request on January 22, 2015, making the ALJ's October 2013 decision the final decision of the Commissioner.

Mr. Barker initiated this action by filing a complaint on March 23, 2015. (Doc. 1). In his complaint, Mr. Barker alleges that the ALJ's denial of his claims is based on findings of fact that are not supported by substantial evidence and on the incorrect application of the law. As relief, Mr. Barker requests that he be awarded benefits, or in the alternative, that this case be remanded to the Commissioner for a new hearing. On May 21, 2015, the Commissioner filed her answer, in which she contends that the ALJ's findings of fact are supported by substantial evidence, and that the decision was made in accordance with the law. (Doc. 9). Together with her answer, the Commissioner filed a certified copy of the transcript of the administrative record including the evidence upon which the ALJ's findings are based. (Doc. 10).

This matter has been fully briefed by the parties and is ripe for decision. (Doc. 12; Doc. 14; Doc. 15).

III.   **Legal Standards**

A.   **Substantial Evidence Review – the Role of This Court**

When reviewing the Commissioner's final decision denying a claimant's application for benefits, this Court's review is limited to the question of whether the findings of the final decision-maker are supported by substantial evidence in the record.  See 42 U.S.C. §405(g); 42 U.S.C. §1383(c)(3); Johnson v. Comm'r of Soc. Sec., 529 F.3d 198, 200 (3d Cir. 2008); Ficca v. Astrue, 901 F.Supp.2d 533, 536 (M.D.Pa. 2012).  Substantial evidence "does not mean a large or considerable amount of evidence, but rather such relevant evidence as a reasonable mind might accept as adequate to support a conclusion."  Pierce v. Underwood, 487 U.S. 552, 565 (1988).  Substantial evidence is less than a preponderance of the evidence but more than a mere scintilla.  Richardson v. Perales, 402 U.S. 389, 401 (1971).  A single piece of evidence is not substantial evidence if the ALJ ignores countervailing evidence or fails to resolve a conflict created by the evidence. Mason v. Shalala, 994 F.2d 1058, 1064 (3d Cir. 1993).  But in an adequately developed factual record, substantial evidence may be "something less than the weight of the evidence, and the possibility of drawing two inconsistent conclusions from the evidence does not prevent [the ALJ's decision] from being supported by substantial evidence."  Consolo v. Fed. Maritime Comm'n, 383 U.S. 607, 620

(1966). "In determining if the Commissioner's decision is supported by substantial evidence the court must scrutinize the record as a whole." <u>Leslie v. Barnhart</u>, 304 F.Supp.2d 623, 627 (M.D.Pa. 2003). The question before this Court, therefore, is not whether Mr. Barker is disabled, but whether the Commissioner's finding that he is not disabled is supported by substantial evidence and was reached based upon a correct application of the relevant law. <u>See</u> <u>Arnold v. Colvin</u>, No. 3:12-CV-02417, 2014 WL 940205, at *1 (M.D.Pa. Mar. 11, 2014)("[I]t has been held that an ALJ's errors of law denote a lack of substantial evidence.")(alterations omitted); <u>Burton v. Schweiker</u>, 512 F.Supp. 913, 914 (W.D.Pa. 1981)("The Secretary's determination as to the status of a claim requires the correct application of the law to the facts."); <u>see also</u> <u>Wright v. Sullivan</u>, 900 F.2d 675, 678 (3d Cir. 1990)(noting that the scope of review on legal matters is plenary); <u>Ficca</u>, 901 F.Supp.2d at 536 ("[T]he court has plenary review of all legal issues . . . .").

### B.    **Initial Burdens of Proof , Persuasion and Articulation for the ALJ**

To receive benefits under the Social Security Act by reason of disability, a claimant must demonstrate an inability to "engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. §423(d)(1)(A);

11

42 U.S.C. §1382c(a)(3)(A); <u>see also</u> 20 C.F.R. §§404.1505(a), 416.905(a).   To satisfy this requirement, a claimant must have a severe physical or mental impairment that makes it impossible to do his or her previous work or any other substantial gainful activity that exists in the national economy.   42 U.S.C. §423(d)(2)(A); 42 U.S.C. §1382c(a)(3)(B); 20 C.F.R. §§404.1505(a), 416.905(a). To receive benefits under Title II of the Social Security Act, a claimant must show that he or she contributed to the insurance program, is under retirement age, and became disabled prior to the date on which he or she was last insured.   42 U.S.C. §423(a); 20 C.F.R. §404.131(a).

In making this determination at the administrative level, the ALJ follows a five-step sequential evaluation process.   20 C.F.R. §§404.1520(a), 416.920(a). Under this process, the ALJ must sequentially determine:  (1) whether the claimant is engaged in substantial gainful activity; (2) whether the claimant has a severe impairment; (3) whether the claimant's impairment meets or equals a listed impairment; (4) whether the claimant is able to do his or her past relevant work; and (5) whether the claimant is able to do any other work, considering his or her age, education, work experience and residual functional capacity ("RFC").   20 C.F.R. §§404.1520(a)(4), 416.920(a)(4).

Between steps three and four, the ALJ must also assess a claimant's RFC. RFC is defined as "that which an individual is still able to do despite the limitations caused by his or her impairment(s)." Burnett v. Comm'r of Soc. Sec., 220 F.3d 112, 121 (3d Cir. 2000) (citations omitted); see also 20 C.F.R. §§404.1520(e), 404.1545(a)(1), 416.920(e), 416.945(a)(1).   In making this assessment, the ALJ considers all of the claimant's medically determinable impairments, including any non-severe impairments identified by the ALJ at step two of his or her analysis.  20 C.F.R. §§404.1545(a)(2), 416.945(a)(2).

At steps one through four, the claimant bears the initial burden of demonstrating the existence of a medically determinable impairment that prevents him or her in engaging in any of his or her past relevant work.   42 U.S.C. §423(d)(5); 42 U.S.C. §1382c(a)(3)(H)(i)(incorporating 42 U.S.C. §423(d)(5) by reference); 20 C.F.R. §§404.1512, 416.912; Mason, 994 F.2d at 1064.

Once this burden has been met by the claimant, it shifts to the Commissioner at step five to show that jobs exist in significant number in the national economy that the claimant could perform that are consistent with the claimant's age, education, work experience and RFC.   20 C.F.R. §§404.1512(f), 416.912(f); Mason, 994 F.2d at 1064.

The ALJ's disability determination must also meet certain basic substantive requisites. Most significant among these legal benchmarks is a requirement that the ALJ adequately explain the legal and factual basis for this disability determination. Thus, in order to facilitate review of the decision under the substantial evidence standard, the ALJ's decision must be accompanied by "a clear and satisfactory explication of the basis on which it rests." Cotter v. Harris, 642 F.2d 700, 704 (3d Cir. 1981). Conflicts in the evidence must be resolved and the ALJ must indicate which evidence was accepted, which evidence was rejected, and the reasons for rejecting certain evidence. Id. at 706-707. In addition, "[t]he ALJ must indicate in his decision which evidence he has rejected and which he is relying on as the basis for his finding." Schaudeck v. Comm'r of Soc. Sec., 181 F. 3d 429, 433 (3d Cir. 1999).

## IV.   Discussion

### A.   The ALJ's Decision Denying Mr. Barker's claims

In his February 2012 decision denying Mr. Barker's applications for benefits, the ALJ found that Mr. Barker met the insured status requirements of Title II of the Social Security Act through December 31, 2013. (Admin. Tr. 15). At step one of the sequential evaluation process the ALJ found that Mr. Barker did not engage in any substantial gainful activity between October 20, 2011, and

14

October 23, 2013.  Id.  At step two the ALJ found that there was sufficient evidence to establish the following medically determinable severe impairments during the relevant period:  cervical degenerative disc disease-spondylosis, and closed head injury.  Id.  The ALJ noted that there were no diagnostic or examination findings to support Mr. Barker's complaints of lower back pain, and no evidence to establish that Mr. Barker's recent ankle/knee injury was severe.  Id. At step three the ALJ found that between October 20, 2011, and October 23, 2013, Mr. Barker did not have an impairment or combination of impairments that met or medically equaled the severity of an impairment listed in 20 C.F.R. Part 404, Subpart P, Appendix 1.  (Admin. Tr. 16).

Between steps three and four the ALJ assessed Mr. Barker's RFC.  He found that between October 20, 2011, and October 23, 2013, Mr. Barker could engage in light work as it is defined by 20 C.F.R. § 404.1567(b) and 20 C.F.R. § 416.967(b) subject to the following additional limitations:

> He is limited to unskilled work (work that requires little or no judgment to do simple duties; that can be learned on the job in 30 days or less with little vocational preparation).  He is limited to work that can be done sitting or standing; occasional climbing, balancing, stooping, kneeling, crouching and crawling; must avoid work at unprotected heights or around dangerous moving machinery; limited to no constant use of the arms/hands; no overhead use of the arms.

(Admin. Tr. 16).

15

The ALJ's findings at steps four and five of the sequential evaluation process were informed by VE Caporale's testimony. VE Caporale testified that an individual with the RFC assessed by the ALJ could not engage in Mr. Barker's past relevant work as a laborer or machine operator because both positions are "medium" work or higher and because "none of the past work had the option to sit or stand." (Admin. Tr. 37-39). Based on this testimony, the ALJ found that Mr. Barker could not engage in his past relevant work at step four of the sequential evaluation process. (Admin. Tr. 19-20). VE Caporale also testified that, an individual with the above RFC and the same vocational factors as Mr. Barker could engage in work as: an information clerk (DOT #237.367-018); bakery worker, conveyor line (DOT 524.687-022); and, mail clerk (DOT #209.687-026). (Admin. Tr. 39-40). He reported that there were 52,000 information clerk positions in the national economy and 410 positions in the local economy (i.e., south central Pennsylvania), 57,500 positions as a bakery worker in the national economy and 410 in the local economy, and 128,000 positions as a mail clerk in the national economy and 360 positions in the local economy. Id. Based on this testimony, the ALJ concluded at step five that, between October 20, 2011, and October 23, 2013, Mr. Barker could engage in other work that exists in significant numbers in the national economy. (Admin. Tr. 20-21).

16

**B.** **The ALJ Properly Evaluated the Medical Opinion Evidence of Record**

As discussed above, between steps three and four of the sequential evaluation process, the ALJ must evaluate a claimant's RFC. The Commissioner's regulations provide that a claimant's RFC is assessed "based on all of the relevant medical and other evidence," including the credible medical opinions of record. 20 C.F.R. § 404.1545; 20 C.F.R. § 416.945. This assessment is then used at steps four and five of the sequential evaluation process. 20 C.F.R. § 404.1520(a); 20 C.F.R. § 416.920(a).

In this case, Mr. Barker alleges that the ALJ's decision at step five of the sequential evaluation process is not supported by substantial evidence because the ALJ improperly discounted the medical opinion of nontreating source Dr. Dhorajia, and therefore failed to account for all of Mr. Barker's credibly established limitations in his RFC assessment. See 20 C.F.R. § 404.1502 and 20 C.F.R. § 416.902 (defining nontreating source).

In deciding what weight to accord to competing medical opinions the ALJ is guided by factors outlined in 20 C.F.R. § 404.1527(c), and 20 C.F.R. § 416.927(c). "The regulations provide progressively more rigorous tests for weighing opinions as the ties between the source of the opinion and the individual become weaker." SSR 96-6p, 1996 WL 374180 at *2. Generally, more weight will be given to a

source who has examined the claimant than to a source who has not.  20 C.F.R. § 404.1527(c)(1); 20 C.F.R. § 416.927(c)(1).

The Commissioner's regulations direct the ALJ to consider the following factors, where applicable, in deciding the weight given to non-controlling medical opinions like those in this case: length of the treatment relationship and frequency of examination; nature and extent of the treatment relationship; the extent to which the source presented relevant evidence to support his or her medical opinion, and the extent to which the basis for the source's conclusions were explained; the extent to which the source's opinion is consistent with the record as a whole; whether the source is a specialist; and, any other factors brought to the ALJ's attention.  20 C.F.R. § 404.1527(c); 20 C.F.R. § 416.927(c).  Where the medical opinions of record conflict "the ALJ may choose whom to credit, but cannot reject evidence for no reason or for the wrong reason."  Morales v. Apfel, 225 F.3d 310, 317 (3d Cir. 2000)(internal quotations omitted).  However, the Third Circuit has observed that "the mere memorialization of a claimant's subjective statements in a medical report does not elevate those statements to a medical opinion."  Morris v. Barnhart, 78 F.App'x 820, 824-25 (3d Cir. 2003).  "An ALJ may discredit a physician's opinion on disability that was premised largely on the claimant's own

accounts of [his] symptoms and limitations when the claimant's complaints are properly discounted." Id.

In his decision, the ALJ accorded "little" weight to the opinion of Dr. Dhorajia's medical source statement that Mr. Barker was incapable of sitting, standing, or walking in any combination for an eight-hour workday.  The ALJ explained that:

> Dr. Dhorajia based these limitations on the claimant's subjective complaints, which are not consistent with or supported by the clinical signs and findings at this evaluation, or other longitudinal evidence. Notably, the examinations reflect good range of motion of the neck and extremities, good grip strength, adequate sensation, no neurological deficits, and normal strength throughout.

(Admin. Tr. 19).  Mr. Barker argues that the ALJ provided no legitimate reason for rejecting Dr. Dhorajia's opinion.   (Doc. 12, p. 10).   He also argues that Dr. Dhorajia's opinion that Mr. Barker could not sit, stand, or walk in any combination for an eight-hour workday is based on objective evidence and not Mr. Barker's subjective complaints.  (Doc. 15 p. 1).

We find that Mr. Barker's argument lacks merit.   As noted by the Commissioner in her brief, Dr. Dhorajia assessed that Mr. Barker could stand or walk for fifteen minutes per eight-hour day, and sit for fifteen minutes per eight-hour day.   (Admin. Tr. 268).   The Commissioner also noted that Dr. Dhorajia reported that:

[Mr. Barker] can lift and carry about 2 to 3 pounds, stand 15 minutes, sit for 15 minutes, push and pull limited in arms and legs secondary to fingers and arms going numb and increased back pain. *Please note this is all per the patient*.

(Admin. Tr. 278)(*emphasis added*).

The "substantial evidence standard is deferential and includes deference to inferences drawn from the facts if they, in turn, are supported by substantial evidence." <u>Schaudeck</u>, 181 F.3d at 431. In this case, substantial evidence supports the ALJ's assessment that Dr. Dhorajia's assessment that Mr. Barker could not sit, stand, or walk in any combination for an eight-hour workday was premised solely on Mr. Barker's own account of his symptoms. Furthermore, we find that the ALJ's assessment that Mr. Barker's subjective complaints were exaggerated is supported substantial evidence.

Mr. Barker also argues that it was improper for the ALJ to accord greater weight to the opinion of nonexamining source Dr. Petruccelli than was given to nontreating source Dr. Dhorajia. (Doc. 12, p. 15). The ALJ accorded "significant" weight to the opinion from the state agency physician, Dr. Petruccelli, that Mr. Barker is capable of light work with occasional postural limitations because it is "consistent with and supported by the record." The ALJ explained that:

The claimant's surgeon released him to work without restriction by October 2010 (Exhibit 2F), and the June 2012 hospital records show he could resume normal activity with the only restrictions to avoid

> heavy lifting, strenuous exercise and fall precautions (Exhibits 8F,
> 9F).

(Admin. Tr. 19).

The Commissioner's regulations provide that, "[g]enerally, we give more weight to the opinion of a source who has examined [the claimant] than to the opinion of a source who has not examined [the claimant]."   20 C.F.R. § 404.1527(c)(1); 20 C.F.R. § 416.927(c)(1).   A different section of the same regulation, however, provides that although ALJs are not bound by the opinion of State agency medical consultants – like Dr. Petruccelli – the consideration of such opinions is governed by the same rules that apply to treating and nontreating sources.  20 C.F.R. § 404.1527(e)(2); 20 C.F.R. § 416.927(e)(2).  Moreover, "[i]n appropriate circumstances, opinions from State agency medical and psychological consultants and other program physicians and psychologists may be entitled to greater weight than the opinions of treating or examining sources."  1996 WL 374180 at *3.  Mr. Barker contends that "without support from independent clinical findings, the opinion of a non-examining physician may not be viewed as substantial evidence to support the ALJ's residual functional capacity determination." (Doc. 12 p. 15).  However, as discussed above it is Dr. Dhorajia's assessment of Mr. Barker's capacity to sit, stand, and walk that is not supported by any independent clinical finding.   Dr. Dhorajia's assessment of Mr. Barker's

21

capacity to sit, stand, and walk is clearly not the product of the physician's *medical* judgment and is instead a recitation of Mr. Barker's discredited subjective testimony.   Unlike Dr. Dhorajia, Dr. Petruccelli cited to objective evidence from Mr. Barker's orthopedist and to diagnostic imaging from York Hospital to support his assessment.   Because Dr. Petruccelli's assessment is the only one based on objective medical evidence, we find that it constitutes substantial evidence in this case.   Cf. Chandler v. Comm'r of Soc. Sec., 667 F.3d 356 (3d Cir. 2011)(holding that an ALJ was entitled to rely on a State agency medical consultant's physical RFC assessment, and finding that such an assessment constituted substantial evidence where it was the only physical capacity assessment before the ALJ). Moreover, the ALJ did not adopt Dr. Petruccelli's assessment in its entirety.   It appears that the ALJ incorporated the aspects of Dr. Dhorajia's assessment (i.e., that Mr. Barker was limited to occasional postural maneuvers, and had some degree of limitation due to numbness in his fingers) that were not based solely on Mr. Barker's statements about his symptoms.

Accordingly, we find that the ALJ's assessment of the medical opinion evidence is proper, and that his RFC assessment is supported by substantial evidence.

**C.**   **The ALJ's Hypothetical Question was Adequate**

Frequently, one of the principal contested issues in this legal setting relates to the claimant's residual capacity for work in the national economy.   There are two ways a claimant can frame a challenge to an ALJ's reliance on vocational testimony at step five.   Rutherford v. Barnhart, 339 F.3d 546, 554 n. 8 (3d Cir. 2005).   First, the claimant can argue that the testimony cannot be relied upon because the ALJ failed to convey limitations to the VE that were properly identified in the RFC assessment.   Id.   Second, the claimant can argue that the VE's testimony cannot be relied upon because the ALJ failed to recognize credibly established limitations during the RFC assessment and thus did not convey those limitations to the VE.   Id.   In either scenario, as an evidentiary matter, the ALJ's error precludes reliance on the VE's response to the faulty hypothetical question.

In this case, the ALJ found that Mr. Barker's physical limitations necessitated that he be permitted to alternate between sitting and standing during the workday.   In a policy ruling that addresses the implications of an RFC for less than the full range of sedentary work, the Commissioner provides that RFC assessments that impose a sit/stand option "must be specific as to the frequency of the individual's need to alternate sitting and standing."   SSR 96-9p, 1996 WL 374185 at *7.   Mr. Barker alleges that the ALJ failed to specify the frequency with

23

which he would be required to alternate sitting and standing, and instead merely requested that VE Caporale identify positions that could be performed sitting or standing. (Doc. 12, p. 17-18).

We find that this argument lacks merit. When confronted with a similar issue, this Court has found that the reasonable implication of an ALJ's description that a claimant could do work that "can be performed sitting or standing" is that the hypothetical individual could choose between sitting and standing at will. Keys v. Colvin, No. 3:14-CV-191, 2015 WL 1275367 at *12 (M.D.Pa. Mar. 19, 2015). The Court in Keys reasoned that, "even if strict adherence to SSR 96-9p required the ALJ to state the frequency that the hypothetical claimant needed to alternate between sitting and standing, any error would be harmless because the jobs the VE identified included an option to sit or stand at will." Id. (citing Hodge v. Barnhart, 76 F. App'x 797, 800 (9th Cir. 2003)(finding that SSR 96-9p does not apply to light work, and that any ambiguity in the ALJ's hypothetical question was harmless because the VE identified occupations that included the option to sit or stand at any time)).

Here, we find that SSR 96-9p is inapplicable because the ALJ limited Mr. Barker to the performance of light, rather than sedentary, work. Further, any error by the ALJ in failing to define the frequency of the sit/stand option imposed is

harmless in this case, since the clear implication of this testimony was that it "included an option to sit or stand at will." <u>Keys v. Colvin</u>, No. 3:14-CV-191, 2015 WL 1275367 at *12 (M.D.Pa. Mar. 19, 2015)(<u>citing Hodge v. Barnhart</u>, 76 F. App'x 797, 800 (9th Cir. 2003). VE Caporale's testimony reflects that he understood the ALJ's hypothetical to convey an option to sit or stand, and only identified occupations where a claimant could be productive either sitting or standing.

Mr. Barker also argues that he is precluded from performing any occupation classified as "light" work, because he is unable to stand and walk, even alternating, for six hours per eight-hour workday.  (Doc. 12, p. 18).  As discussed above, the ALJ included a sit/stand option in his assessment, thus assessed an RFC that is not compatible with the performance of either sedentary or light work.  SSR 83-12, 1983 WL 31253 at *4.   As such, we find that Mr. Barker's allegation that the ALJ's RFC assessment is erroneous because he cannot be expected to stand or walk for six hours per eight-hour workday is meritless, in light of the fact that the RFC assessed did not contemplate that he was able to do so.

### D.   The ALJ's Assessment of Mr. Barker's Subjective Complaints is Supported by Substantial Evidence

The assessment of a claimant's statements about his or her symptoms is governed by 20 C.F.R. § 404.1529 and 20 C.F.R. § 416.929.  <u>See also</u> SSR 96-7p,

1996 WL 374186.[3]  The Commissioner's regulations outline a two-step process to guide this assessment.   First, the adjudicator must determine whether the claimant's medically determinable impairment or impairments could reasonably be expected to produce the symptoms alleged.  20 C.F.R. § 404.1529; 20 C.F.R. § 416.929.   Second, the adjudicator must evaluate the intensity, persistence, and limiting effects of the symptoms credited in the first step of this analysis.  Id. Factors relevant to this analysis include:  the claimant's daily activities; the location, duration, frequency, and intensity of the claimant's symptoms; precipitating or aggravating factors; the type, dosage, effectiveness, and side effects of any medication that the claimant takes or has taken to alleviate his or her symptoms; and any measures used to relieve the symptoms.   20 C.F.R. § 404.1529(c); 20 C.F.R. § 416.929(c).

---

[3] SSR 96-7p, has since been superseded by SSR 16-3p.  The new ruling eliminates the term "credibility" from the Social Security Administration's policy guidance in order to "clarify that subjective symptom evaluation is not an examination of the individual's character."  SSR 16-3p, 2016 WL 2229029 at *1.  Because it was applied by the ALJ, and cited by the parties, we rely on SSR 96-7p.  A comparison of these rulings reveals that there are few substantive changes.  Both outline a two-step process to evaluate a claimant's subjective statements, and identify the same factors to be considered in the ALJ's assessment of the intensity, persistence, and limiting effects of a claimant's symptoms.  Because the ALJ and the parties cite to SSR 96-7p, we rely on this ruling as well.  However, this analysis would not be different under the new ruling.

During the second step of this evaluation, a claimant's statements will not be rejected solely because they are not substantiated by objective medical evidence. 20 C.F.R. § 404.1529(c)(2); 20 C.F.R. § 416.929(c)(2). A claimant's statements must be considered in relation to the record as a whole. The adjudicator "will consider whether there are any inconsistencies in the evidence and the extent to which there are any conflicts between the claimant's statements and the rest of the evidence . . . ." 20 C.F.R. § 404.1529(c)(4); 20 C.F.R. § 416.929(c)(4).

Mr. Barker argues that, during the second step of his evaluation of Mr. Barker's symptoms, the ALJ did not properly apply the 20 C.F.R. § 404.1529(c) and 20 C.F.R. § 416.929(c) factors as required by the Commissioner's regulations and by SSR 96-7p. (Doc. 12, p. 19). His argument is two-fold. First, Mr. Barker alleges that the ALJ mischaracterized the evidence of record when evaluating Mr. Barker's daily activities. Second, he argues that the ALJ failed to discuss location, duration, and frequency of Mr. Barker's pain or any of the factors that precipitate or aggravate Mr. Barker's pain.

With respect to his first argument, Mr. Barker alleges that the ALJ mischaracterized statements from a March 2012 function report when he noted that:

> At filing, [Mr. Barker] reported the ability to perform a wide range of activities including personal care, cooking, cleaning, shopping,

27

> laundry, household repairs, watching his friend's child, playing cards,
> doing puzzles and watching television.

(Admin. Tr. 19).  Mr. Barker asserts the ALJ erred by finding that the statements

from the 2012 function report were inconsistent with the alleged severity of his

symptoms.

We find little merit in Mr. Barker's allegation that the ALJ mischaracterized

the March 2012 function report.  Contrary to Mr. Barker's allegations the ALJ did

not find that Mr. Barker's March 2012 function report was not consistent with the

alleged severity of his symptoms.   The ALJ evaluated the consistency of Mr.

Barker's testimony throughout the relevant period, and noted that Mr. Barker's

testimony was internally inconsistent, and that this inconsistency could not

reasonably be attributed to an increase in his symptomatology.  SSR 96-7p directs

the ALJ to compare statements made by the claimant in connection with his claim

to statements made under other circumstances and to statements made during the

earlier steps of the administrative review process.   1996 WL 374186 at *5.   The

same ruling provides that where such inconsistencies exist, the ALJ is obligated to

consider the fact that symptoms vary in their intensity, persistence, and functional

effects, and review the case record to determine whether there are any explanations

for any variations in the claimant's statements.  Id.  The consistency of such

statements, both internally and with other information in the case record, is a

strong indication of credibility.  Id.  As such, we find that the ALJ properly addressed an internal inconsistency in Mr. Barker's testimony.

Mr. Barker's second argument fares little better.  Although he alleges that the ALJ failed to consider Mr. Barker's allegations concerning the location, duration, frequency and intensity of his pain, and activities or conditions that precipitate or aggravate that pain, we find that this argument also lacks merit.  The ALJ's consideration of Mr. Barker's allegations with respect to these factors is reflected in the ALJ's written decision.  Moreover, an ALJ's findings based on the credibility of a claimant are to be accorded great weight and deference, since an ALJ is charged with the duty of observing a witness's demeanor and credibility.  Frazier v. Apfel, No. 99-CV-715, 2000 WL 288246 *9(E.D. Pa. Mar. 7, 2000)(quoting Walters, 127 F.3d at 531).  After reviewing the ALJ's evaluation of Mr. Barker's testimony in light of his arguments and with the appropriate degree of deference, we find that there is no basis to disturb the ALJ's ruling.

## V.    **<u>Recommendation</u>**

Accordingly, for the foregoing reasons, IT IS RECOMMENDED that Mr. Barker's request for relief be DENIED and the Commissioner's final decision denying Mr. Barker's claims be AFFIRMED as follows:

1.   Final judgment should be entered in favor of the Commissioner of

     Social Security; and,

2.   The clerk of court should close this case.

The parties are further placed on notice that pursuant to Local Rule 72.3:

Any party may object to a magistrate judge's proposed findings, recommendations or report addressing a motion or matter described in 28 U.S.C. § 636 (b)(1)(B) or making a recommendation for the disposition of a prisoner case or a habeas corpus petition within fourteen (14) days after being served with a copy thereof. Such party shall file with the clerk of court, and serve on the magistrate judge and all parties, written objections which shall specifically identify the portions of the proposed findings, recommendations or report to which objection is made and the basis for such objections. The briefing requirements set forth in Local Rule 72.2 shall apply. A judge shall make a de novo determination of those portions of the report or specified proposed findings or recommendations to which objection is made and may accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate judge. The judge, however, need conduct a new hearing only in his or her discretion or where required by law, and may consider the record developed before the magistrate judge, making his or her own determination on the basis of that record. The judge may also receive further evidence, recall witnesses or recommit the matter to the magistrate judge with instructions.

Failure to file timely Objections to the foregoing Report and

Recommendation may constitute a waiver of any appellate rights.

Submitted this 27th day of July 2016.

_**S/Martin C. Carlson**_
Martin C. Carlson
United States Magistrate Judge